Jeanne **SHERMAN**, Appellant,

v.

**FIRST FINANCIAL PLANNERS, INC., Respondent.**

No. ED 78106.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 10, 2001.

Jack B. Spooner, Clayton, MO, for Appellant.

Steven J. McMahon, St. Louis, MO, for Respondent.

DRAPER, Judge.

■ The claimant, Jeanne Sherman (hereinafter, "Sherman"), appeals from the Labor and Industrial Relations Commission's (hereinafter, "Commission") decision in favor of the employer, First Financial Planners, Inc. (hereinafter, "FFP"). The Commission affirmed the administrative law judge's decision denying Sherman's claim to workers' compensation benefits. Sherman asserts [1] the Commission erred in finding: (1) her duties were not extraordinary or unusual; (2) her medical injury was not caused by work related factors; (3) her psychiatric symptoms were non-work related and FFP dismissed her in good faith; and (4) compensation for FFP's expert witness was excessive.

■ We only review questions of law in an appeal from the Commission in a workers' compensation proceeding. *Williams v. DePaul Health Center,* 996 S.W.2d 619, 625 (Mo.App. E.D.1999). "We can modify, reverse, remand for rehearing, or set aside awards based on factual determinations only on the grounds prescribed by statute." *Id.* (*citing Wiele v. National Super Mkts., Inc.,* 948 S.W.2d 142, 145 (Mo.App. E.D.1997)). Section 287.495.1 RSMo (1994) [2] limits these statutory grounds to situations when: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; and/or (4) there was insufficient competent evidence in the record to justify the making of the award. When the Commission's decision is based upon factual determinations, we review the record in the light most favorable to the decision. *Williams,* 996 S.W.2d at 625. This Court defers to the Commission's resolution of issues of credibility and conflicting evidence, and in the absence of fraud, its findings are conclusive and binding. *Id.;* Section 287.495.1. However, we are not bound by any decision of the Commission which is an interpretation or application of law. *Williams,* 996 S.W.2d at 625.

Sherman was an employee for FFP for sixteen years and held the title of executive assistant to the president of FFP (hereinafter, "President") by 1996. Sherman's duties included, but were not limited to: approval of purchase orders and check requests, access to personnel files, use of the FFP credit card, hiring and firing of employees, meeting daily with President, and general supervisory authority over most other employees. Additionally, Sherman had authority to use President's signature stamp and oversaw daily operations of FFP when President was out of the office. Sherman was the only employee to occupy this position within FFP during her tenure there.

Sherman was supervised only by President. President's employee review of Sherman in March 1996 indicated that Sherman was an exemplary employee who surpassed all others and only had difficulty in the area of computer technology which was no fault of her own.

In June 1996, President hired Californian Ray Sulka (hereinafter, "Consultant") as an independent contractor to review, evaluate, and improve FFP's technical systems. President gave Sherman instructions to accommodate Consultant. Sher-

---

1. We remind attorneys when drafting their points relied on to review and follow the dictates of *Thummel v. King,* 570 S.W.2d 679 (Mo. banc 1978) and Rule 84.04. Failure to comply with these dictates can result in the dismissal of the point relied on. *M.C. v. Year-*
*gin,* 11 S.W.3d 604, 611 (Mo.App. E.D.1999); Rule 84.04(d).

2. All further statutory references are to RSMo (1994) unless otherwise noted.

man had contact daily with Consultant in the Saint Louis office. At the end of the month, Sherman reported her approval of Consultant to President. President relied on Sherman's evaluation of Consultant. Accordingly, when Sherman endorsed Consultant's recommendations, FFP implemented changes to the computer systems that summer even though Consultant's recommendations did not enjoy the support of the entire executive staff. Consultant was hired full time and moved to Saint Louis. Sherman was confronted repeatedly with a lack of support from the executive staff regarding Consultant's plans. During review of FFP's systems, problems arose relating to security and copying of data from the computers.

President questioned Sherman in late August 1996 about the rumor of a romantic relationship between her and Consultant. Sherman denied any involvement with Consultant and suggested a team building session at a resort to bolster the executive staff's confidence in her decision making and Consultant's recommendations. President agreed to her suggestion. Sherman arranged for the session and scheduled sleeping accommodations which included her own assignment, a two bedroom condominium with Consultant. After the session, Sherman reported to President that the event was a success. However, the executive staff did not agree with her assessment of the situation.

On September 25, 1996, President met with Sherman in order to give her an opportunity to explain her continued support of Consultant. President states that at this meeting President reviewed Sherman's recent job performance, discussing issues of good judgment, loyalty, and trust regarding her interaction with Consultant. Sherman claims that President yelled at her during this meeting and stated that he believed the only reason she continued to support Consultant was due to the rumored continuation of their affair. Sherman was informed that the following day there would be a meeting with the executive staff to allow her the opportunity to explain her reasons for continuing to support Consultant. Sherman stated that she was emotionally upset and left work early crying and shaking.

The following day, Sherman addressed the executive committee by reading a prepared statement explaining her position. After reading the statement she continued to be disturbed and again left work early. Sherman testified that her mental condition did not change after September 27. She attempted to work on September 27, but stated she still was upset and left work to see a doctor. On September 30, Sherman stated she faxed a memorandum to President reporting that she was emotionally upset and requested a report be filed with workers' compensation so that her medical bills and anticipated counseling could be paid. Sherman continued to visit various doctors and receive treatment for her condition. FFP terminated Sherman's employment in October 1996.

After a hearing before the administrative law judge on July 13 and 14, 1999, Sherman was denied workers' compensation benefits. Sherman filed a timely petition for review before the Commission. The Commission adopted in full the Findings of Fact and Conclusions of Law entered by the administrative law judge. Sherman appeals.

■ Sherman argues that the Commission erred in its finding that her hours and duties were not extraordinary or unusual because she did not present evidence that the responsibilities caused her mental injury pursuant to Section 287.120.8. She claims the finding was against the weight of the evidence presented. We find this argument unpersuasive.

■ For an applicant to recover for a mental injury from work related stress, the applicant must show "the stress is work-related and was extraordinary and unusual." Section 287.120.8. Work stress is measured objectively and by actual events. *Id.* Sherman must compare her "work-related stress with the stress encountered by employees having similar positions, regardless of employer, with a focus on evidence of the stress encountered by similarly situated employees for the same employer." *Williams,* 996 S.W.2d at 628.

Sherman failed to present evidence of stress as encountered by employees in similar positions with different employers nor did she adequately present evidence of stress by similarly situated employees at FFP.[3] The Commission found that Sherman was an important employee of FFP, that she worked long hours in order for the company to become successful, and she was compensated for her specialized knowledge. Yet, without presenting evidence of similarly situated employees, Sherman is unable to meet the statutory burden set forth in Section 287.120.8. Point denied.

Next, Sherman claims that she presented overwhelming competent evidence that the work related factors were substantial factors causing her mental injury and thus, the Commission's finding was erroneous. We find the Commission did not err in its finding.

■ When there are conflicting opinions of medical experts, the fact finding body determines whose opinion is the most credible. *Kelley v. Banta & Stude Const. Co., Inc.,* 1 S.W.3d 43, 48 (Mo.App. E.D.

1999). Further, "the fact finder may reject all or part of one party's expert testimony which it does not consider credible and accept as true the contrary testimony given by the other litigant's expert." *Id.* The Commission's choice is binding on this Court when there are permissive inferences which may be drawn from conflicting evidence. *Plaster v. Dayco Corp.,* 760 S.W.2d 911, 913 (Mo.App. S.D.1988). Since we defer to the Commission's factual findings, and Sherman fails to present evidence of how the Commission erred as a matter of law, this point is denied.

■ In her third point, Sherman believes she presented overwhelming competent evidence in conformance with Missouri law that the work events causing her mental injury were not disciplinary action, work evaluation, demotions or termination taken in good faith. Thus, she believes the Commission erred in its application of Section 287.120.9. We disagree.

Sherman states in her brief that this argument involves issues of fact. Section 287.120.9 states:

A mental injury is not considered to arise out of and in the course of the employment if it resulted from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination or any similar action taken in good faith by the employer.

Sherman claims that her injury arose from the meeting with President on September 25, 1996. Sherman and President testified that the meeting involved an evaluation of her job duties relating to Consultant which ultimately resulted in her termination from FFP.[4]

---

3. At oral argument, counsel admitted there was no testimony from other similarly situated employees regardless of employer.

4. Some of Sherman's acts for which she was confronted included, but were not limited to, signing President's name for an elevator service contract, signing President's name for software for Consultant, signing President's

The Commission specifically found President to be a credible witness and that his actions taken were in good faith pursuant to Section 287.120.9. Additionally, the Commission found Sherman's credibility seriously undermined on various topics all related to FFP's business activity during the summer of 1996. The Commission is the sole judge of the credibility of the witnesses, and this Court will not substitute its interpretation of factual issues even if it would have made a different determination. *Garibay v. Treasurer of Missouri*, 930 S.W.2d 57, 59 (Mo.App. E.D. 1996). Upon review of the Commission, this Court may not substitute its judgment on the evidence for that of the Commission. *Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App. W.D.1995). Point denied.

Sherman's final point on appeal claims that the Commission's determination of compensation for FFP's expert witness is contrary to Section 287.210.7 and not supported by sufficient competent evidence. Section 287.210.7 states in pertinent part:

> ... and each cross-examiner shall compensate the physician for the portion of testimony obtained in an amount not to exceed a rate of reasonable compensation taking into consideration the specialty practice by the physician. Cross-examination testimony shall not bind the cross-examining party. Any testimony obtained by the offering party shall be at that party's expense on a proportional basis, including the deposition fee of the physician....

The Commission noted the typical compensation rate for physicians in the Saint Louis area. It further noted that FFP's expert doctor not only practiced a special-

ized area of medicine but also practiced in a coastal city which has a higher cost of business. The determination of compensation for the witness was not excessive for a specialized physician in Saint Louis nor did it compensate the expert for his preparation time. Therefore, the compensation was not excessive for one who may have greater business expenses. Additionally, the Commission's award was divided proportionally between the parties. The Commission did not contravene Section 287.210.7. Point denied.

The final award of the Commission which affirmed the findings, conclusions, and decision of the administrative law judge is affirmed.

GARY M. GAERTNER Sr., P.J., and LAWRENCE G. CRAHAN, J., concur.

name to an employer IRA application for Consultant's benefit, and accusing President

of mismanagement of the computer systems.