**Michael MORIARTY, Respondent,**

v.

**TREASURER OF the STATE OF MISSOURI, as Custodian of the Second Injury Fund, Appellant.**

**No. ED 83843.**

Missouri Court of Appeals, Eastern District, Division Four.

Aug. 10, 2004.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, MO, Eileen Ruppe Krispin, St. Louis, MO, for appellant.

James J. Sievers, Jr., Clayton, MO, for respondent.

BOOKER T. SHAW, Presiding Judge.

The Second Injury Fund ("the Fund") appeals from the decision of the Labor and Industrial Relations Commission ("the Commission") awarding claimant Michael Moriarty ("Moriarty") permanent total disability benefits from the Fund for Injury No. 01–043033, dated March 30, 2001 and permanent partial disability benefits for Injury No. 01–093693, dated February 1, 2001.

The Fund argues the Commission erred in: (1) issuing two separate awards on Moriarty's injuries because the evidence showed that his disability was actually a result of one injury; (2) finding Moriarty permanently and totally disabled because there was no competent and substantial evidence to support the award in that the evidence showed that Moriarty was employable in the open market; and (3) finding Moriarty permanently and totally disabled because there was no competent and substantial evidence to support the award in that the evidence showed that Moriarty's limitations were due to his last injury alone. We reverse in part and affirm in part.

Moriarty was born on September 20, 1949 and has been a member of Union Local 1 since 1965. His last employment was with Cardinal Environmental Operations, Inc. ("Cardinal") as an asbestos worker/coverer. His job duties were physically strenuous and included climbing, "hot work" and "cold work."

Moriarty was exposed to Cerawool, a fiberglass-like material that essentially served as a replacement for asbestos, while he worked at Washington University for Cardinal. He began working with Cerawool in 2001. His symptoms from his exposure to Cerawool include not being able to breathe easily, gasping for air at night and trouble breathing while walking up short flights of stairs. Moriarty also has chronic coughing for one-half hour every morning as a result of his exposure to Cerawool.

Moriarty also had several pre-existing medical conditions. In 1982, Moriarty was exposed to carbon monoxide while working on a scaffold in a building without openings. This caused him severe headaches and an increase in blood pressure, but he was able to return to work after a few days. In 1985, Moriarty slipped off of a

ladder and fractured his left ankle that caused him to miss about six weeks of work. In 1991, Moriarty suffered a back injury that resulted in a herniated disc and caused him to miss several months of work.

In November of 2002, Moriarty filed two claims for workers' compensation against his employer, Cardinal, and the Fund. Moriarty and Cardinal settled these two claims prior to the hearing before the administrative law judge ("ALJ") and entered two settlement stipulations into evidence. The ALJ issued his award on July 2, 2003 for Injury No. 01–04033 (March 30, 2001 exposure), finding the Fund liable for permanent total disability benefits for the remainder of Moriarty's life in the amount of $599.96 per week. On August 18, 2003, the ALJ issued his award for Injury No. 01–093693 (February 1, 2001 exposure), finding the Fund liable for permanent partial disability in the amount of $11,470.49. The Fund filed an application for review and motion to consolidate the two claims, which the Commission granted. On November 4, 2003, the Commission issued its Final Award on Injury No. 01–43033, unanimously affirming the ALJ's decision, and adopting his findings. On November 25, 2003, the Commission issued its Final Award on Injury No. 01–093693, unanimously affirming the ALJ's decision, and adopting his findings.[1] This appeal follows.

Section 287.495.1, RSMo 2000, which governs appeals from awards of the Commission, sets out our standard of review:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following

grounds and no other: (1)[t]hat the [C]ommission acted without or in excess of its powers; (2)[t]hat the award was procured by fraud; (3)[t]hat the facts found by the [C]ommission do not support the award; (4)[t]hat there was not sufficient competent evidence in the record to warrant the making of the award. "[F]indings of fact made by the [C]ommission within its powers shall be conclusive and binding." *Id.* On issues concerning credibility and the weight to be given conflicting evidence, we defer to the Commission's judgment. *Hughey v. Chrysler Corp.*, 34 S.W.3d 845, 846 (Mo.App. E.D. 2000). However, we independently review questions of law. *Johnson v. Denton Construction Co.*, 911 S.W.2d 286, 287 (Mo. banc 1995). "This [C]ourt reviews decisions of the [C]ommission, which are clearly interpretations or applications of law, for correctness without deference to the [C]ommission's judgment." *Shipp v. Treasurer of State*, 99 S.W.3d 44, 50 (Mo.App. E.D.2003) (overruled on other grounds, *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo.2003)). When the Commission affirms or adopts the findings of an ALJ, the decision and findings of the ALJ are reviewed as adopted by the Commission. *Hughey*, 34 S.W.3d at 846. We "must examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence." *Hampton*, 121 S.W.3d at 222–23. We determine whether the award is supported by competent and substantial evidence "by examining the evidence in the context of the whole record." *Id.* at 223.

In its first point on appeal, the Fund argues the Commission erred in issuing two separate awards on Moriarty's

---

1. It is not clear from the record before us why the Commission apparently granted the Fund's motion to consolidate the two claims, but then entered two separate awards.

injuries because the evidence showed that his disability was actually a result of one injury. We agree.

■ In a workers' compensation case, it is the claimant's burden to prove "not only causation between the accident and the injury but also that a disability resulted and the extent of such disability." *Griggs v. A.B. Chance Co.*, 503 S.W.2d 697, 703 (Mo.App. W.D.1973). Further, "proof of permanency of injury requires reasonable certainty." *Id.* This proof must be based on competent and substantial evidence and not merely on speculation. *Id.* "Failure to offer expert testimony regarding the percentage of disability derived from the compensable injury bars the claimant from recovering permanent partial disability benefits." *Miller v. Wefelmeyer*, 890 S.W.2d 372, 376 (Mo.App. E.D. 1994) (overruled on other grounds, *Hampton*, 121 S.W.3d 220); *see also, Goleman v. MCI Transporters*, 844 S.W.2d 463, 466 (Mo.App. W.D.1992) (overruled on other grounds, *Hampton*, 121 S.W.3d 220) (finding it was claimant's burden to prove the extent of the pre-existing injury if he was to receive permanent partial disability benefits for the additional injury).

Here, the only medical expert in the case was Dr. Volarich, Moriarty's expert. On cross-examination, Dr. Volarich answered "Correct" when asked, "And not unlike the PPD, you couldn't tell us what restrictions went to which particular '01 claims." Specifically, Dr. Volarich testified that "the overall fifty percent disability rating . . . is due to the combination of those two [exposures]," and that it is "impossible to break those [two exposures] out."

As such, Moriarty failed to prove the nature and extent of each separate pending disability claim, beyond the fact that his two exposures are work-related and sustained while he was an employee of Cardinal. Specifically, Moriarty did not meet his burden of proof as to the extent of the February 2001 disability. Therefore, the Commission's award of permanent partial disability on this February 2001 claim was not supported by competent and substantial evidence in the record and is reversed.

■ In its second point on appeal, the Fund argues the Commission erred in finding Moriarty permanently and totally disabled because there was no competent and substantial evidence to support the award in that the evidence showed that Moriarty was employable in the open market.

The evidence before the Commission included the medical testimony of Dr. Volarich and a vocational assessment by Ms. June M. Blaine, a rehabilitation counselor. Dr. Volarich testified that as a result of the exposures to Cerawool, Moriarty was not employable in the open market. Ms. Blune also testified that it was her opinion that as a result of these exposures, Moriarty was not employable in the open market. The ALJ specifically found that Ms. Blaine "testified very credibly that the combination of [Moriarty's] physical limitations along with his employment history, testing information and lack of transferable skills, that [Moriarty] is unemployable in the open labor market." Finally, Moriarty himself testified that he had no experience doing anything else other than his work as an asbestos worker/pipe coverer for thirty-eight years. Therefore, we find that in the context of the record as a whole, the Commission's finding that Moriarty was permanently and totally disabled was supported by competent and substantial evidence. Point II is denied.

■ In its third and final point on appeal, the Fund argues the Commission erred in finding Moriarty permanently and

totally disabled because there was no competent and substantial evidence to support the award in that the evidence showed that Moriarty's limitations were due to his last injury alone.

As already discussed above, Dr. Volarich testified that Moriarty's limitations were a result of his exposures to Cerawool in 2001, as well as his prior pre-existing medical conditions. Ms. Blaine also expressed a similar opinion, as already discussed above. Therefore, we find that in the context of the record as a whole, the Commission's finding that Moriarty was permanently and totally disabled was supported by competent and substantial evidence. Point III is denied.

The Commission's award of permanent partial disability for Moriarty's February 2001 Cerawool exposure is hereby reversed. The Commission's award of permanent total disability for Moriarty's March 2001 exposure, and in all other respects, is hereby affirmed.

REVERSED IN PART; AFFIRMED IN PART.

LAWRENCE G. CRAHAN, PATRICIA L. COHEN, JJ., concur.